# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

TONYA KELLY, on behalf of herself and ) 
all others similarly situated, )
)
                       **Plaintiff,** )
)
v. )          **Case No. 14-CV-00119-DW**
)
CAPE COD POTATO CHIP COMPANY, )
INC. and SNYDER'S-LANCE, INC., )
)
                    **Defendants.** )
)

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
## <u>DEFENDANTS' MOTION TO DISMISS</u>

# Table of Contents

Page

Introduction...................................................................................................................1

Argument and Authorities.............................................................................................1

    I.  Kelly Has Sufficiently Stated a Claim for Relief under the MMPA. ...................1

        A.  Kelly Has Alleged an Objectively Ascertainable Loss under the MMPA's
            Benefit-of-the-Bargain Rule. .......................................................................4

        B.  Kelly Has Stated a Claim for False or Deceptive Conduct under the MMPA. .............9

            1.  Defendants' "All Natural" and "No Preservatives" Representations Are
                Actionable under the MMPA...............................................................10

            2.  Defendants May Not Rely on a Product Ingredient List to Avoid an MMPA
                Claim Premised on False and Deceptive Labeling. ................................14

    II.  Kelly Has Standing to Seek Injunctive Relief against Defendants and to Challenge
       Defendants' Entire Product Line. .....................................................................16

        A.  Kelly Has Standing to Seek Injunctive Relief Against Defendants..........................16

        B.  Kelly Has Standing to Challenge All Flavors of the Chips. .......................................18

Conclusion ..................................................................................................................20

Case 4:14-cv-00119-DW   Document 21   Filed 05/09/14   Page 2 of 27

## Table of Authorities

Page(s)

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..............................................18

*Ackerman v. Coca-Cola Co.*,
No. CV-09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ..................................... 15-16

*Am. Italian Pasta Co. v. New World Pasta Co.*,
371 F.3d 387 (8th Cir. 2004) ..............................................................................................11

*Anderson v. Jamba Juice Co.*,
888 F. Supp. 2d 1000 (N.D. Cal. 2012) .................................................................................19

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 13-cv-01196, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ................................... 18-19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
Nos. 10-cv-4387, 10-cv-4937, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ......................13

*Astiana v. Dryer's Grand Ice Cream*,
Nos. 11-cv-2910, 11-cv-3164, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ......................18

*Balser v. Hain Celestial Group, Inc.*,
No. 13-cv-05604, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) .................................... 13-14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................................2

*Bohac v. Gen. Mills, Inc.*,
12-CV-05280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ........................................ 12-14

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ..................................................................................................2

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................................................................................... 16-17

*Clancy v. Bromley Tea Co.*,
No. 12-cv-03003, 2013 WL 4081632 (N.D. Cal. Aug 9, 2013) ............................................19

ii

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .........................................................11

*Coons v. Mineta*,
    410 F.3d 1036 (8th Cir. 2005) ........................................................2

*Donaldson v. Pillsbury Co.*,
    554 F.2d 825 (8th Cir. 1977) .........................................................20

*Doyel v. McDonald's Corp.*,
    No. 4:08-CV-1198 CAS, 2009 WL 350627 (E.D. Mo. Feb. 10, 2009)..................19

*Faibisch v. Univ. of Minn.*,
    304 F.3d 797 (8th Cir. 2002) .........................................................16

*Forcellati v. Hyland's, Inc.*,
    876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...............................................19

*Fortyune v. Am. Multi-Cinema, Inc.*,
    No. 10-cv-551, 2002 WL 32985838 (C.D. Cal. Oct. 22, 2002) ..........................18

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    --- F. Supp. 2d ----, 2014 WL 1285137 (S.D.N.Y. Mar. 27, 2014) .......................7

*Grabinski v. Blue Springs Ford Sales, Inc.*,
    136 F.3d 565 (8th Cir. 1998) .......................................................4, 6

*Gratz v. Bollinger*,
    539 U.S. 244 (2003).................................................................19

*Hitt v. Ariz. Beverage Co.*,
    No. 08-cv-809, 2009 WL 449190 (S.D. Cal. Feb. 4, 2009)..............................13

*Huch v. Charter Commc'ns, Inc.*,
    290 S.W.3d 721 (Mo. banc 2009)..........................................2-4, 12, 14

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ..................................................7

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    751 F. Supp. 2d 277 (D. Mass. 2010) ..................................................7

*In re TCT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 4345446 (N.D. Cal. Sept. 15, 2011)........................8

*In re Usery,*
  123 F.3d 1089 (8th Cir. 1997) ...................................................................5, 9

*Janney v. Gen. Mills, Inc.,*
  944 F. Supp. 2d 806 (N.D. Cal. 2013) ..............................................13

*Janney v. Gen. Mills, Inc.,*
  No. 12-cv-03919, 2014 WL 1266299 (N.D. Cal. Mar. 26, 2014) .........................14

*Jou v. Kimberly-Clark Corp.,*
  No. 13-cv-03075, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)...................10-15

*Lanovaz v. Twinings N. Am., Inc.,*
  No. C-12-02646, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014)...................18

*McAdams v. McCord,*
  584 F.3d 1111 (8th Cir. 2009) ...........................................................8-9

*Miller v. Ghirardelli Chocolate Co.,*
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ..............................................18

*Miller v. Nestle Purina PetCare Co.,*
  No. 4:13CV283 HEA, 2014 WL 307271 (E.D. Mo. Jan. 28, 2014)...................8-9

*Morales v. Unilever U.S., Inc.,*
  No. 2:13-2213 WBS EFB, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) ..............12

*O'Shea v. Littleton,*
  414 U.S. 488 (1974)...........................................................................17

*Parker v. J.M. Smucker Co.,*
  No. C-13-0690 SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013) ..............12

*Pelayo v. Nestle USA, Inc.,*
  No. 13-cv-5213, 2013 WL 5764644 (C.D. Cal. 2013) ..........................13

*Ports Petroleum Co., Inc. of Ohio v. Nixon,*
  37 S.W.3d 237 (Mo. banc 2001)..........................................................9

*Plubell v. Merck & Co.,*
  289 S.W.3d 707 (Mo. Ct. App. 2009)...............................................4-8

*Raster v. Ameristar Casinos, Inc.,*
  280 S.W.3d 120 (Mo. Ct. App. 2009)...............................................3, 9

iv

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ........................................................17

*Rojas v. Gen. Mills, Inc.*,
    No. 12-cv-05099, 2014 WL 1248017 (N.D. Cal. Mar. 26, 2014) .............. 11-12, 15

*Sunset Pools v. Schaefer*,
    869 S.W.2d 883 (Mo. Ct. App. 1994)....................................................4

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010)...............................................13

*Ward v. West Cnty. Motor Co.*,
    403 S.W.3d 82 (Mo. banc 2013) ....................................................... 3-4

*Whitney v. Alltel Commc'ns, Inc.*,
    173 S.W.3d 300 (Mo. Ct. App. 2005)....................................................3

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) .........................................................12, 15

*Young Am. Corp v. Affiliated Computer Servs. (ACS) Inc.*,
    424 F.3d 840 (8th Cir. 2005) ........................................................ 16-17


Mo. Rev. Stat. § 407.020 ................................................................. 3-4, 9

Mo. Rev. Stat. § 407.025 ............................................................... 3-4, 17


5B Wright, et al., *Federal Practice & Procedure* § 1357 (3d ed. 2004) .......................................16

Plaintiff Tonya Kelly ("Kelly") submits the following Suggestions in Opposition to Defendants' Motion to Dismiss (Doc. #7).

**Introduction**

This lawsuit asserts that Defendants have been falsely and deceptively marketing Cape Cod brand Kettle Cooked Potato Chips (the "Chips") as an "all natural" product that contains "no preservatives" in order to exploit consumers' preference for high-quality food that is natural and healthy. Contrary to these representations, however, the Chips contain numerous artificial and synthetic ingredients, added coloring, and preservatives. Kelly claims, both individually and on behalf of all other persons similarly situated in Missouri, that Defendants' false and deceptive marketing of the Chips violates the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, *et seq.* Kelly seeks to recover damages on behalf of Missouri consumers who purchased the Chips, all of whom allegedly suffered an ascertainable loss under the MMPA's benefit-of-the-bargain rule because the value of the Chips as represented was less than the actual value of the product as purchased, as well as injunctive relief, reasonable attorneys' fees, and punitive damages.

Defendants seek the dismissal of all or part of Kelly's Petition based on arguments that disregard the substantive law for MMPA claims or are based on legal principles that are unpersuasive and inapplicable. For the following reasons, the Court should deny the Motion to Dismiss.

**Argument and Authorities**

**I.      Kelly Has Sufficiently Stated a Claim for Relief under the MMPA.**

Defendants move to dismiss Kelly's Petition under Fed. R. Civ. P. 12(b)(6). In addressing a Rule 12(b)(6) motion to dismiss, the Court "must accept the allegations contained in the

1

complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). The complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). The complaint "does not need detailed factual allegations," but instead needs only enough factual allegations "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A complaint states a facially plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, Kelly's Petition merely needs to allege enough facts to allow the Court to draw a reasonable inference that Defendants are liable to her under the MMPA.

The intent and scope of the MMPA is significant to determining whether Kelly has stated a plausible claim for its violation. The MMPA is "paternalistic," its "fundamental purpose is the 'protection of consumers,' . . . and, to promote that purpose, the act prohibits false, fraudulent or deceptive merchandising practices." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724, 726-27 (Mo. banc 2009) (citations omitted). In upholding the MMPA's broad and fundamental policy, the Missouri Supreme Court has explained:

> [The MMPA] is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices. Having enacted paternalistic legislation designed to protect those that could not otherwise protect themselves, the Missouri legislature would not want the protections of Chapter 407 to be waived . . . . [T]he very fact that this legislation is paternalistic in nature indicates that it is fundamental policy. . .

*Id.* at 725-26 (quotations omitted). Given the fundamental state policy embodied in the MMPA, Missouri courts consistently have rejected arguments that "'would effectively strip consumers of

2

the protections afforded to them under [it] and unfairly allow companies . . . to insulate themselves from the consumer protection laws of [Missouri].'" *Id.* at 726-27 (quotations omitted); *see id.* (refusing to apply "voluntary payment" doctrine to dismiss MMPA claims due to MMPA's broad, paternalistic intent); *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 313-14 (Mo. Ct. App. 2005) (refusing to enforce arbitration clause because doing so would deny broad protections afforded by MMPA).

To achieve its important goal of protecting consumers, the MMPA "creates an individual cause of action . . . for any person 'who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020.'" *Ward v. West Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013) (quoting Mo. Rev. Stat. § 407.025.1). Section 407.020 of the MMPA provides that certain acts "in connection with the sale or advertisement of any merchandise in trade or commerce" are unlawful. *Huch*, 290 S.W.3d at 724 (citation omitted). Because the MMPA is intended to be broadly construed "to preserve fundamental honesty, fair play and right dealings in public transactions" and to fulfill the legislature's "clear policy to protect consumers," it does not define deceptive practices. *Id.* at 724-25 (prohibited deceptive practices are not limited because MMPA was drafted expansively "to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions"); *see Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 131 (Mo. Ct. App. 2009) (MMPA "paints in broad strokes to prevent evasion . . . due to overly meticulous definitions").

The MMPA permits any person who "suffers an ascertainable loss of money or property" as the result of an unlawful practice to file a civil lawsuit to recover actual and punitive damages,

3

as well as attorney fees, from any person who has engaged in a method, act or practice declared unlawful by § 407.020. *Huch*, 290 S.W.3d at 725 (citing Mo. Rev. Stat. § 407.025.1). The MMPA authorizes the filing of a class action lawsuit when the unlawful conduct has caused similar injury to "numerous other persons," and provides that a court may order an "injunction or other equitable relief and reasonable attorney's fees." *Id.* (citing § 407.025.2).  To state a claim under the MMPA, Kelly need only allege that she: (1) purchased merchandise from Defendants; (2) did so for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property as a result of an act deemed unlawful by § 407.020 (*i.e.*, the use of "any deception, fraud, false pretense, false promise, misrepresentation, [or] unfair practice . . . in connection with the sale"). *Ward*, 403 S.W.3d at 84.

Defendants do not dispute that Kelly alleges she purchased merchandise (the Chips) or that she made such purchases for personal, family, or household purposes. Instead, Defendants argue that: (a) Kelly has not alleged an ascertainable loss of money; and (b) the "all natural" labeling on the Chips cannot constitute an MMPA violation as a matter of law. These arguments do not support dismissal, particularly in light of the broad scope and paternalistic intent of the MMPA.

### A.      Kelly Has Alleged an Objectively Ascertainable Loss under the MMPA's Benefit-of-the-Bargain Rule.

Kelly has sufficiently alleged an objectively ascertainable loss under the MMPA pursuant to Missouri's benefit-of-the-bargain rule. Under the benefit-of-the-bargain rule regularly applied in MMPA cases, a plaintiff is "entitled to 'the difference between the actual value of the property and what its value would have been if it had been as represented.'" *Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565, 570 (8th Cir. 1998) (quoting *Sunset Pools v. Schaefer*, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994)); *see also Plubell v. Merck & Co.*, 289 S.W.3d 707, 715

(Mo. Ct. App. 2009) (benefit-of-the-bargain rule is "applicable in MMPA cases to meet the element of ascertainable loss"). The purpose of the benefit-of-the-bargain rule "is to compensate the victim for the harm caused by the defendant's fraudulent representations," and damages under the rule "are measured at the time of the transaction." *In re Usery*, 123 F.3d 1089, 1094 (8th Cir. 1997). An ascertainable loss of money is sufficiently pleaded if the plaintiff's allegations plausibly show that the product purchased was worth less than the product as it was represented.

In this case, Kelly has alleged facts, if taken as true and with all reasonable inferences drawn in her favor, sufficient to show an ascertainable loss under the benefit-of-the-bargain rule, particularly when the broad and paternalistic intent of the MMPA is considered. The Petition alleges that Kelly suffered an ascertainable loss as a result of Defendants' conduct. Specifically, she alleges that "she did not receive the full value of the advertised product" because she "paid for an 'all natural' product that contains 'no preservatives,' but received a product that actually contains artificial and synthetic ingredients, preservatives, and added colors." (Pet. ¶ 8.) She alleges that she is similar to "thousands of consumers throughout the State of Missouri" who purchased Chips advertised as "all natural" and without preservatives, "yet received an inferior product that is unnatural and contains preservatives." (*Id.* ¶ 9.) The Petition alleges that she and Missouri consumers in the putative class did not receive the benefit of their bargain because of Defendants' conduct (*id.* ¶¶ 47-56), specifically alleging that Kelly and putative class members "paid more for [the] Chips because they reasonably believed they were purchasing an 'all natural' snack that is free of preservatives," and that their willingness to pay more for the product results from the alleged misrepresentation of the product as "all natural" and preservative-free (*id.* ¶¶ 52-53).

Ignoring the benefit-of-the-bargain damages theory pleaded in the Petition, Defendants strain to mischaracterize Kelly's claim as depending entirely on allegations that the Chips are sold at a "premium price" due to the "all natural" labeling. Defendants contend that Kelly is required to allege that some portion of the price charged for the Chips was solely due to the "all natural" labeling and that no other factors could account for the price, but cite no relevant legal authority holding that such allegations are required to properly state an MMPA claim.[1] Defendants alternatively argue that Kelly needed to exhaustively survey competing brands to show the amount charged for the Chips over other brands that do not purport to be "all natural." Both arguments misconstrue Kelly's case theory, improperly constrict the meaning and application of "ascertainable loss" under the MMPA, and ignore the broad and paternalistic protection the MMPA is intended to afford consumers.

Under the MMPA, damages under the benefit-of-the-bargain rule are measured objectively as the difference in value between the product as represented and the product in fact. *See, e.g., Grabinski*, 136 F.3d at 570. As noted above, Kelly alleges that the Chips' "all natural" labeling was false and that this false labeling caused the Chips to be worth less than they were represented to be. That is, she alleges that Defendants promised an "all natural" product, yet delivered an inferior product containing non-natural ingredients. These allegations and their reasonable inferences reflect that Kelly suffered an ascertainable loss because the product she purchased (i.e., chips that are highly processed and contain artificial and synthetic ingredients) is

---

[1] For instance, Defendants assert that "there could be any number of reasons why consumers may pay an alleged premium for the Chips." Defs.' Suggs. at 6. But requiring a subjective inquiry into why consumers might have bought the Chips or how much they might possibly pay under different circumstances is irrelevant to whether an MMPA claim has been stated and at odds with the MMPA's broad, paternalistic scope. *See Plubell*, 289 S.W.3d at 714 (an MMPA "claim does not require . . . subjective, individualized inquiries" into what a consumer may have done had the product been properly labeled).

objectively worth less than the product represented (i.e., "all natural" chips that do not contain artificial and synthetic ingredients).

As other courts have held in similar cases involving similar allegations of ascertainable loss under the benefit-of-the-bargain rule, Kelly's allegations are sufficient to state a plausible claim of ascertainable economic loss under the MMPA, which is to be broadly construed and applied to achieve its purposes. *See, e.g., Plubell*, 289 S.W.3d at 715 ("because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 470 (E.D.N.Y. 2013) (denying motion to dismiss MMPA claim and finding ascertainable loss alleged sufficiently where the plaintiffs alleged they paid "more for the [p]roduct than they would have and/or [purchased] the [p]roduct when they would not have if the horsepower of the [p]roduct had not been misrepresented"); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 295 (D. Mass. 2010) ("Injury under the [MMPA] is sufficiently pled where the class members allege that the actual value of the item they purchased was less than the value of the item as it was represented to be at the time it was purchased."). Kelly is not required to allege a comparison of competing chips' prices or an extensive analysis of Defendants' pricing practices to state an MMPA claim using the benefit-of-the-bargain rule. *Cf. Goldemberg v. Johnson & Johnson Consumer Cos.*, --- F. Supp. 2d ----, 2014 WL 1285137, at *11 (S.D.N.Y. Mar. 27, 2014) (plaintiff was not required to allege the prices of competing products to state a deceptive practices claim under New York law).

Kelly does not need to allege – let alone ***prove*** – in her pleadings that the Chips cost more than other brands of chips that are not represented as "all natural." In *Plubell*, the Missouri Court of Appeals considered and rejected a similar argument. *See Plubell*, 289 S.W.3d at 714. There,

the defendant appealed the trial court's certification of a class under the MMPA concerning the marketing of the prescription drug Vioxx. *Id.* In asserting that individualized issues predominated, the defendant argued that each class member would have to prove a "loss" by comparing the price of Vioxx to the cost of alternative therapy. *Id.* at 714-15. The court expressly rejected this argument:

> Nor does the MMPA require each Plaintiff to prove "loss" by individually showing the cost of alternative therapy. Plaintiffs alleged, "[t]he product they and other class members purchased was worth less than the product they thought they had purchased had [Merck's] representations been true." The trial court found they had alleged an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction. . . . [B]ecause Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule.

*Id.* Simply put, the expansive MMPA does not require Kelly to compare the prices for the Chips to the prices for competitors' products in order to state that she suffered an objectively ascertainable loss. Nor does it require that her Petition rule out other explanations for the prices:

> Contrary to defendants' representations, Missouri does not require an exacting proof of loss in order for a loss to be considered actionable. Rather, a plaintiff must only establish that the product he purchased was "worth less than the product as represented."

*In re TCT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4345446, at *2 (N.D. Cal. Sept. 15, 2011) (quoting *Plubell*, 289 S.W.3d at 715). The allegations of Kelly's Petition easily satisfy this standard.[2]

---

[2] The cases Defendants cite in support of their argument on this issue do not address the benefit-of-the-bargain theory alleged by Kelly and are thus inapposite. In fact, *McAdams v. McCord*, 584 F.3d 1111 (8th Cir. 2009), did not involve any MMPA claims, but instead involved securities fraud claims under § 10(b) of the federal Securities Exchange Act of 1934 and Rule 10b-5. *See McAdams*, 584 F.3d at 1113. Similarly, *Miller v. Nestle Purina PetCare Co.*, No. 4:13CV283 HEA, 2014 WL 307271 (E.D. Mo. Jan. 28, 2014), has nothing to do with the benefit-of-the-bargain theory pleaded by Kelly, or even with whether an "ascertainable loss" was properly alleged. Instead, the court found the complaint deficient for other reasons, including the

Notably, Defendants have not cited any authority holding that a plaintiff asserting an MMPA claim must allege specific details ruling out other potential explanations for product prices in order to state a claim under Rule 12(b)(6), and such an approach would be contrary to the broad construction and application that the MMPA is supposed to receive. The Court, therefore, should reject Defendants' strained arguments for dismissal.

### B. Kelly Has Stated a Claim for False or Deceptive Conduct under the MMPA.

Kelly has sufficiently alleged that Defendants employed an unlawful practice in selling its Chips by marketing them as "all natural" and as containing "no preservatives." An "unlawful practice" under the MMPA includes "any deception, fraud, false pretense, false promise, misrepresentation, or unfair practice . . . ." Mo. Rev. Stat. § 407.020.1. The "plain and ordinary meaning of the words ["unfair practice"] themselves . . . are unrestricted, all-encompassing and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). Because the MMPA "is designed to preserve fundamental honesty, fair play and right dealings in public transactions," it "paints in broad strokes to prevent evasion thereof due to overly meticulous definitions." *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 131 (Mo. Ct. App. 2009); *see also Huch*, 290 S.W.3d at 724-25 (deceptive practices are not defined in MMPA because it was drafted expansively "to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions.").

---

failure to plead the alleged misrepresentations with particularity. *Id.*, 2014 WL 307271, at *3. The theory of loss in both cases was based on events occurring *after* the plaintiffs' purchases – the stock's loss of value years after purchase in *McAdams*, and the dog's illness that manifested and subsided after purchase of the pet food in *Miller*. In contrast, Kelly's damages under the benefit-of-the-bargain rule are determined at the time of her transaction and are not subject to variation based on post-purchase events like those in *McAdams* and *Miller*. *See In re Usery*, 123 F.3d at 1094 (benefit-of-the-bargain damages "are measured at the time of the transaction").

Kelly has sufficiently alleged that Defendants engaged in a practice forbidden by the wide-ranging scope of the MMPA. Kelly alleges that Defendants have "engaged in a comprehensive and uniform marketing campaign to brand [the] Chips as an all natural food product that is free of preservatives." (Pet. ¶ 21) She further alleges that the Chips "are not 'all natural' because they contain numerous artificial and synthetic ingredients," and also alleges that the Chips are "not preservative-free because they contain numerous ingredients that act as preservatives." *Id.* ¶ 30. Kelly additionally alleges that, "[r]ather than openly and honestly marketing [the] Chips, Defendants deliberately chose to market [the] Chips falsely and deceptively by uniformly misrepresenting and misbranding [the] Chips as an 'all natural' food product that contains 'no preservatives.'" *Id.* ¶ 46. The Petition details numerous respects in which the Chips are not natural and free of preservatives. *Id.* ¶¶ 39, 40(a)-(m), 41-44.

Defendants offer two grounds in support of their argument that marketing of the Chips as "all natural" cannot constitute an "unlawful practice" as a matter of law. First, they assert that the "all natural" representation cannot be actionable on the ground that Kelly has not stated a plausible definition of the term. *See* Defs.' Suggs. at 7. Second, they argue that a consumer could not be deceived by the "all natural" labeling because the ingredients are listed on the back of the packaging. *Id.* at 10. Both arguments are without merit.

1.    ***Defendants' "All Natural" and "No Preservatives" Representations Are Actionable under the MMPA.***

Defendants' argument that the term "all natural" is not actionable because there is no plausible definition of the term is essentially an argument that the term "all natural" constitutes non-actionable puffery. *See Jou v. Kimberly-Clark Corp.*, No. 13-cv-03075, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) (observing that the defendant's argument that "'pure & natural' is, at least in the world of consumers, devoid of a well-defined meaning" was an argument that

the term was "mere puffery").[3] "Puffery" includes "exaggerated statements of bluster or boast" and "vague or highly subjective claims of product superiority." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) (finding "America's Favorite Pasta" to be puffery). On the other hand, an actionable statement is a "'specific and measureable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Id.* (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)).

In this case, use of the term "all natural" to describe the Chips is not a vague or exaggerated statement of superiority. It is a specific statement of quality and character that is demonstrably false. And despite Defendants' bare assertions to the contrary, the term "natural" (and by extension, the phrase "all natural") is both capable of being defined and capable of being enforced by federal agencies. *See* Petition ¶ 40(c) (identifying the FDA warning letter to the Hirzel Canning Company stating that the company could not label its product "natural" due to the existence of calcium chloride and citric acid in the product); *id.* ¶ 40(d) (alleging that "products governed by the USDA must qualify natural claims if they contain dextrose."). As Kelly expressly alleges in her Petition, and consistent with definitions of "natural" used by the FDA and the USDA specifically cited in the Petition, a product represented as "natural" means that the product does not "contain any artificial or synthetic ingredients, coloring or artificial flavoring, or chemical preservatives." Pet. ¶ 36. In light of the objective nature of these definitions, courts repeatedly have rejected arguments that "all natural" (or similar terms such as "pure and natural") are mere puffery. *See, e.g., Rojas v. Gen. Mills, Inc.*, No. 12-cv-05099, 2014

---

[3]     Throughout their Suggestions in Support, Defendants disingenuously omit the modifier "all" from their reference to the "all natural" labeling on the Chips. This omission is material. *See, e.g., Jou*, 2013 WL 6491158 at *6 ("[T]he use of 'all' in 'all natural' may make the inference *even more* plausible than the inference arising from the use of just 'natural[.]'").

WL 1248017, at *6 (N.D. Cal. Mar. 26, 2014) (stating that the plaintiff's definition of "natural" as "not artificial, not synthetic, and no more than minimally processed" is "internally consistent and supported by applicable federal regulations and guidance."); *Jou*, 2013 WL 6491158, at *7-10 (rejecting the defendant's argument that "pure and natural" was non-actionable puffery); *Parker v. J.M. Smucker Co.*, No. C-13-0690 SC, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) ("'All Natural' is an affirmative claim about a product's qualities, and it does not amount to mere puffery because it is not outrageous and generalized.").

Moreover, the Missouri Supreme Court recently held in *Huch* that because of the MMPA's "broad scope and the legislature's clear policy to protect consumers, certain legal principles are not available to defeat claims under the act." 290 S.W.3d at 725. In light of this pronouncement from the Missouri Supreme Court, and the fact that Defendants have not cited any decisions holding puffery to be a defense to an MMPA claim, the Court should reject Defendants' argument.

Numerous federal courts have rejected similar arguments, holding that the term "all natural" is an actionable statement. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false."). One court recently explained: "Even if plaintiffs had not proffered an objective meaning of the term 'natural,' they need not do so; the relevant question is the meaning that consumers would attach to the term. As many courts have observed, this is generally not a question that can be resolved on a motion to dismiss." *Morales v. Unilever U.S., Inc.*, No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014). *See also Bohac v. Gen. Mills, Inc.*, 12-CV-05280, 2014 WL 1266848, at *6 (N.D. Cal.

Mar. 26, 2014) ("[T]he alleged misrepresentations of '100% NATURAL' and 'All Natural' are not merely general in nature. The statements convey the affirmative and factual representation that the products are made *entirely* of natural ingredients."); *Janney v. Gen. Mills, Inc.*, 944 F. Supp. 2d 806, 817 (N.D. Cal. 2013) (denying motion to dismiss as to products labeled "All Natural" or "100% Natural"); *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. 10-cv-4387, 10-cv-4937, 2011 WL 2111796, at *5-6 (N.D. Cal. May 26, 2011) (denying motion to dismiss where plaintiff alleged that ice cream labeled "all natural" contained synthetic ingredients); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) ("plaintiffs have stated a plausible claim that a reasonable consumer would be deceived by defendant's ['all natural'] labeling"); *Hitt v. Ariz. Beverage Co.,* No. 08-cv-809, 2009 WL 449190, at *7 (S.D. Cal. Feb. 4, 2009) (denying motion to dismiss where plaintiff alleged that products labeled "all natural" contained high fructose corn syrup).

Similarly without merit is Defendants' argument that "all natural" is not an actionable statement because the Chips "are, of course, processed foods . . . and processed foods, by definition, do not occur in nature." *See* Defs.' Suggs. at 8. The court rejected a nearly identical argument in *Jou*, reasoning that the argument was "a caricature" of the plaintiffs' allegations because the plaintiffs were claiming "that consumers would likely be misled in believing that 'natural' means the [products] have no non-natural ingredients—not that the [the products] are fruits of the earth." *Jou*, 2013 WL 6491158, at *8. Likewise, Kelly has sufficiently alleged that the labeling on the Chips is false and deceptive because "all natural" means that the product contains no artificial or synthetic ingredients, not that the Chips grow on trees. Thus, Defendants' reliance on *Pelayo v. Nestle USA, Inc.*, No. 13-cv-5213, 2013 WL 5764644 (C.D. Cal. 2013), and *Balser v. Hain Celestial Group, Inc.*, No. 13-cv-05604, 2013 WL 6673617, at

*1-2 (C.D. Cal. Dec. 18, 2013), is misplaced. *See Jou*, 2013 WL 6491158, at *8 (*Pelayo*'s holding "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts"); *see also Janney v. Gen. Mills, Inc.*, No. 12-cv-03919, 2014 WL 1266299, at *6 (N.D. Cal. Mar. 26, 2014) (same); *Bohac*, 2014 WL 1266848, at *7 (same).

For these reasons, the alleged "all natural" representation on the Chips' packaging is a "specific and measurable" claim that is capable of being proved false. It is not mere puffery. And in any event, Defendants altogether fail to challenge Kelly's claim regarding the "no preservatives" representation. Accordingly, the Petition states an actionable claim for misrepresentation under the MMPA.

### 2. *Defendants May Not Rely on a Product Ingredient List to Avoid an MMPA Claim Premised on False and Deceptive Labeling.*

Defendants also argue that the "all natural" label on the Chips cannot constitute an unlawful practice, as a matter of law, because the ingredients are listed on the back of the package. *See* Defs.' Suggs. at 10. This argument is fundamentally flawed and has been rejected by numerous other courts.

First, Defendants' argument is inconsistent with the broad purposes of the MMPA and the Missouri Supreme Court's decision in *Huch*, in which the court held that "certain legal principles are not available to defeat claims authorized by [the MMPA]" because the statute is "paternalistic legislation" designed to "regulate the marketplace to the advantage of" consumers. 290 S.W.3d at 725-27. In particular, *Huch* holds that an argument that a consumer "voluntarily" paid for a product "with full knowledge of the facts in the case" is not a viable defense to an MMPA claim because it would be "illogical," "inequitable" and "contrary to public policy" to shift the onus from manufacturers to consumers under the MMPA. *Id.* at 727. The same rationale

14

applies to Defendants' argument that the list of ingredients on the back of the Chips' package should excuse the "all natural" misrepresentations on the front of the package.

Furthermore, Defendants' argument necessarily assumes that reasonable consumers have an encyclopedic knowledge of the many methods and sources from which such food ingredients are derived, including, for instance, that canola oil is refined through alkalineutralization (using potassium hydroxide, bleaching chemicals, and cleaning solutions) or that dextrose is commercially derived through chemical degradation of corn starch via acidic or enzymatic hydrolysis. *See* Pet. ¶ 40(b), (d). To assume that consumers have such knowledge would violate the well-settled rule that the Court is required to grant the plaintiff the benefit of all reasonable inferences in deciding a Rule 12(b)(6) motion.

In addition, this argument improperly expects consumers to "look beyond misleading representations on the front of the [package] to discover the truth from the ingredient list in small print on the [back of the package]." *Williams*, 552 F.3d at 934. The Ninth Circuit has squarely rejected a similar argument:

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.

*Id.*; *see also Rojas*, 2014 WL 1248017, at *7-8 (rejecting argument that the defendant could rely on ingredient list to cure misrepresentations that product was "all natural"); *Jou*, 2013 WL 6491158, at *9 ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused. Further, the Court fails to see how the disclosures necessarily inform the consumer that the [products] include non-natural ingredients."); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395, 2010 WL 2925955, at *15-16 (E.D.N.Y. July 21, 2010) ("The fact that the actual sugar content

of vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled"). Accordingly, the Court should reject Defendants' "back of the package" argument.

Because Kelly's Petition satisfies the standards for pleading a claim under the MMPA, the Court should deny Defendants' Rule 12(b)(6) motion to dismiss. If the Court believes the Petition is deficient in any respect, it should grant Kelly leave to file an amended complaint. *See* 5B Wright, et al., *Federal Practice & Procedure* § 1357 (3d ed. 2004) ("The federal rule policy of deciding cases on the basis of the substantive rights involved rather than technicalities requires that the plaintiff be given every opportunity to cure a formal defect in a pleading.").

## II. Kelly Has Standing to Seek Injunctive Relief against Defendants and to Challenge Defendants' Entire Product Line.

Dismissal under Rule 12(b)(1) is proper only where the district court lacks subject matter jurisdiction, such as when a plaintiff lacks standing. *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). To establish standing under Article III of the U.S. Constitution, Kelly must show: "(1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury." *Young Am. Corp v. Affiliated Computer Servs. (ACS) Inc.*, 424 F.3d 840, 843 (8th Cir. 2005).

Defendants do not dispute that Kelly suffered an injury in fact when she purchased the Chips. Defendants instead argue that her Petition should be dismissed to the extent she seeks injunctive relief, or to the extent she asserts a claim against Defendants for Chip flavors beyond those specific flavors she purchased. These arguments should be rejected.

### A. Kelly Has Standing to Seek Injunctive Relief Against Defendants.

To establish standing for prospective injunctive relief, Kelly must show that there is "a sufficient likelihood that she will again be wronged in a similar way." *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 111 (1983). While "past wrongs do not in themselves amount to [the] real and immediate threat of injury necessary to make out a case or controversy," *id.* at 103, "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

Defendants argue that Kelly does not have standing to pursue injunctive relief because, "***[p]resumably***, Plaintiff now knows the 'truth' about the Chips, and will not purchase them again." Defs.' Suggs. at 12 (emphasis added). It is well-recognized, however, that a plaintiff has standing to pursue prospective injunctive relief in a putative class action if he or she might still be interested in purchasing the product if labeled correctly, and the MMPA specifically authorizes injunctive relief in § 407.025.2. Defendants' argument is clearly based on an inference drawn ***against Kelly***, as the Petition does not allege that she will never purchase the product again in the future. Because Defendants' argument impermissibly depends on drawing an inference in Defendants' favor and against Kelly, it violates the legal standard for a motion to dismiss. *See Young Am. Corp.*, 424 F.3d at 843 ("In assessing whether the plaintiff has alleged a sufficiently concrete and particularized injury [to support standing], the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor.").

As another federal court recently explained in rejecting a similar argument:

> Should plaintiffs encounter the denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress. . . . ***[W]ere the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result.***

*Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (emphasis added). Accordingly, "courts have consistently held that plaintiffs have standing to seek injunctive relief

based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395, 2013 WL 7044866, at \*15 n.23 (E.D.N.Y. July 18, 2013) (collecting cases); *see also Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646, 2014 WL 46822, at \*10 (N.D. Cal. Jan. 6, 2014) (collecting cases and holding that the plaintiff has standing to seek injunctive relief in false labeling case).

As with the plaintiffs in *Ries*, and construing the Petition's allegations in Kelly's favor as required, there is a real and immediate threat that Kelly will encounter the same type of harm the MMPA is designed to redress if she cannot prohibit Defendants from continuing their deceptive conduct. *See Fortyune v. Am. Multi-Cinema, Inc.*, No. 10-cv-551, 2002 WL 32985838, at \*7 (C.D. Cal. Oct. 22, 2002) ("This court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice."). This is sufficient to confer standing on Kelly to sue for injunctive relief.

### B.     Kelly Has Standing to Challenge All Flavors of the Chips.

Defendants also argue that Kelly's claims should be dismissed to the extent she challenges flavors of the Chips that she did not specifically purchase. Most courts have treated this issue in one of two ways, neither of which supports Defendants' argument.

"The majority of courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). The "substantially similar" inquiry is generally met if the plaintiffs "are challenging the same basic mislabeling practice across different product flavors." *Astiana v. Dryer's Grand Ice Cream*, Nos. 11-cv-2910, 11-cv-3164, 2012 WL 2990766, at \*13 (N.D. Cal. July 20, 2012); *see also, e.g., Ang v.*

*Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014) (collecting cases and concluding that "the best approach is one which focuses on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products"); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (holding that plaintiff who purchased several flavors of smoothie kits labeled "All Natural" had standing to assert claims regarding other flavors because the "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor"). These decisions are consistent with the general rule that standing is treated more expansively in the context of class actions. *See Gratz v. Bollinger*, 539 U.S. 244, 265 (2003) (holding that named plaintiff had standing to challenge race-based admissions criteria for both freshmen and transfer applicants even though the plaintiff had only applied as a freshman, where similar criteria were used in both contexts); *Ang*, 2014 WL 1024182, at *4 (citing *Gratz* and analyzing the reasons "for treating standing more expansively in the class action context").

Many other courts have held that the question of whether a plaintiff can assert a claim relating to other varieties of products is an issue of "typicality" to be addressed at the class certification stage under Fed. R. Civ. P. 23, not one of standing to be addressed under Rule 12(b)(1). *See, e.g.*, *Clancy v. Bromley Tea Co.*, No. 12-cv-03003, 2013 WL 4081632, at *5-6 (N.D. Cal. Aug 9, 2013) ("Deciding at the pleading stage that a plaintiff cannot represent a class who purchased any different products than the plaintiff seems unwarranted, at least on the facts of this case."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161 (C.D. Cal. 2012) (denying defendants' motion to dismiss because the "argument is better taken under the lens of typicality or adequacy of representation, rather than standing."); *Doyel v. McDonald's Corp.*, No. 4:08-CV-1198 CAS, 2009 WL 350627, at *5 (E.D. Mo. Feb. 10, 2009) (denying motion to

dismiss claims on standing grounds of alleged pay violations at other McDonald's locations than the McDonald's restaurant where the named plaintiff worked, reasoning that "this argument goes to plaintiffs' ability to certify a class pursuant to Rule 23 and to act as class representatives" and was not an issue of constitutional standing). Under Rule 23, the typicality requirement is met if there are "other members of the class who have the same *or similar grievances* as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977) (emphasis added). If typicality is satisfied, along with other standards under Rule 23, the named plaintiff can pursue claims on behalf of class members arising out of the same legal or remedial theory, even if there are some factual variations among the class members' claims. *Id.* at 831-32.

In this case, the allegations in Kelly's Petition establish that each flavor of the Chips is substantially similar in nature and that identical "all natural' and "no preservatives" statements are on every package, regardless of the flavor. *See* Pet. ¶ 23 ("The representations that Cape Cod Chips are 'all natural' and contain 'no preservatives' are . . . uniformly stated on all varieties of Cape Cod Chips with the same placement, stylistic design, and grammatical emphasis on each package."). Furthermore, each variety challenged by Kelly is the same basic product: "Kettle Cooked Potato Chips." *See id.* ¶16 (identifying the different flavors at issue). Because the Petition's allegations and all reasonable inferences drawn therefrom demonstrate that Kelly has asserted a claim regarding products that are substantially similar, Defendants' arguments for dismissal on this ground should be rejected. Alternatively, the Court should defer this issue until the class certification stage and deny the motion to dismiss based on standing.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

SHANK & HAMILTON, P.C.

By: ___/s *Christopher S. Shank*_____
        Christopher S. Shank, MO #28760
        David L. Heinemann, MO #37622
        Stephen J. Moore, #KS-000827
        2345 Grand Blvd., Suite 1600
        Kansas City, Missouri 64108
        Telephone:    (816) 471-0909
        Facsimile:    (816) 471-3888
        chriss@shankhamilton.com
        davidh@shankhamilton.com
        sjm@shankhamilton.com

*Attorneys for Plaintiff Tonya Kelly*

## Certificate of Service

The undersigned attorney hereby certifies that on May 9, 2014, a true and accurate copy of the foregoing document was served via the Court's eFiling system on the following counsel of record:

**Counsel for Defendants**

John C. Aisenbrey
George F. Verschelden
STINSON LEONARD STREET, LLC
1201 Walnut St., Ste. 2900
Kansas City, MO 64106

Kiran H. Mehta
K & L GATES, LLP
214 North Tryon Street, Ste. 4700
Charlotte, NC 28202

Matthew G. Ball
K & L GATES, LLP
4 Embarcadero Center, Ste. 1200
San Francisco, CA 94111

_____*s/ Christopher S. Shank*_____
        Attorney for Plaintiff