IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| TONYA KELLY, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14-00119-CV-W-DW |
| CAPE COD POTATO CHIP COMPANY, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

Before the Court is the Motion to Dismiss Plaintiff's Class Action Petition (Doc. 7) filed by Defendants Cape Cod Potato Chip Company, Inc. and Snyder's-Lance, Inc. Plaintiff Tonya Kelly opposes the motion. Defendants move to dismiss Plaintiff's Class Action Petition (the "Petition") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They argue that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In addition, they assert that the Court lacks subject-matter jurisdiction under Rule 12(b)(1) as to some of the claims because Plaintiff has failed to establish standing. Upon review, the Court concludes that the motion should be granted and the Petition should be dismissed for failure to state a claim on which relief can be granted. The Court also concludes that Plaintiff lacks standing to seek injunctive relief and to assert claims as to products that she did not purchase.

    **I.    Background**

Plaintiff filed her Petition in the Circuit Court of Jackson County, Missouri, alleging Defendants violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §

407.010 et seq. Thereafter, Defendant Snyder's-Lance, Inc. removed the case to this court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453. Plaintiff alleges that Defendants, national producers and marketers of Kettle Cooked Potato Chip brand snack food, have been falsely labeling and marketing sixteen different varieties of Cape Cod Chips (the "Chips") as "all natural" products that contains "no preservatives," when the Chips are actually not all natural and contain preservatives. The Petition further alleges that these false and deceptive marketing practices allow Defendants to differentiate the Chips from comparable products and to charge a higher price, or price premium, for the product. Plaintiff seeks relief for herself and on behalf of all consumers who, from November 25, 2008 to the present purchased the Chips in the State of Missouri in the form of actual and punitive damages, interest, restitution, injunctive and declaratory relief, attorney fees and costs.

**II.     Applicable Law**

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). The complaint must contain more than labels and conclusions or a formulaic recitation of the elements of the claim. Twombly, 550 U.S. at 555. For purposes of a Rule 12(b)(6) motion, the court must accept the allegations of the complaint as true; however, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must prove constitutional standing by showing (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. Republican Party v. Klobuchar, 381 F.3d 785, 791-92 (8th Cir. 2004) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61 (1992)). Establishing an injury-in-fact requires a showing of "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. at 791.

### III. Analysis

Defendants argue three main bases for dismissal: (1) Plaintiff has failed to state a plausible claim that she has suffered an ascertainable loss of money or property; (2) Plaintiff has failed to plausibly allege that the labeling of the Chips as "natural" is false or deceptive; and (3) Plaintiff lacks standing in two ways: (a) to seek injunctive relief, because she has admitted that she would not purchase the chips again; and (b) to assert claims as to the 12 varieties of the Chips that she did not purchase, because she suffered no loss as to those varieties.

To successfully present a claim under the MMPA, a plaintiff must allege that she (1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of defendant's use of one of the methods, acts or practices declared unlawful by the Act. See Mo. Rev. Stat. § 407.025.1. Those unlawful methods, acts or practices include "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1.

3

### A. Plaintiff's claim of an ascertainable loss under the MMPA

Defendants' first basis for dismissal is that Plaintiff has failed to plausibly allege that she has suffered an ascertainable loss of money or property. Defendants raise two specific arguments: (a) the Petition improperly assumes that any alleged price premium is solely due to the labeling of the Chips as "natural"; and (b) the Petition alleges no facts to suggest that a price premium exists at all. In support of their first argument, Defendants claim that there could be any number of alternate reasons why consumers pay an alleged premium price for Defendants' Chips. As examples, Defendants allege that consumers might pay a higher price for their Chips because their Chips taste better, their advertising or packaging is more appealing to consumers, or their Chips get better shelf placement. They further argue that perhaps they charge a higher price because their cost structure requires that they do so in order to earn a profit on the Chips.

Under Missouri law, a plaintiff must show that she "suffered pecuniary loss in order to prevail on [her] MMPA claim." Grawitch v. Charter Commc'ns., Inc., 750 F.3d 956, 960 (8th Cir. 2014). Missouri courts apply the benefit of the bargain rule to determine whether there has been an ascertainable loss. See Sunset Pools v. Schaefer, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994). This rule allows a purchaser "to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented." Id.; see also Plubell v. Merck & Co., 289 S.W.3d 707, 715 (Mo. App. W.D. 2009) (benefit of the bargain rule is "applicable in MMPA cases to meet the element of ascertainable loss"). A complaint, however, "must allege facts to support the [] allegation of damages." Grawitch, 750 F.3d at 960.

Here, the Petition alleges sufficient facts to show an ascertainable loss under the benefit of the bargain rule. Plaintiff alleges that she purchased the Chips, which were represented as being "natural" and as containing "no preservatives." She further claims that, contrary to those

4

representations, the Chips were an "inferior product," as they were not "natural" and contained preservatives. Thus, according to Plaintiff, the allegedly false representations caused her to pay more for the Chips, which were worth less than they were represented to be. Based on the foregoing allegations, accepted as true for purposes of this motion and drawing all reasonable inferences in her favor, Plaintiff has pleaded that she paid too much for the Chips based on Defendants' misleading representations, supporting her claim of an ascertainable loss. This finding is not altered by Defendants' suggested alternate reasons for any price premium.

Defendants also argue that Plaintiff has failed to allege that any price premium exists at all. They assert that Plaintiff has failed to allege facts regarding any competing chip not labeled as "natural," the price of any such competing chip, and whether such competing chip was available at the time and place at which Plaintiff purchased Defendants' Chips. Defendants also argue that Plaintiff has failed to allege the amount of the price premium or what Defendants' Chips should have cost.

Again, however, under the benefit of the bargain rule as applied to MMPA claims, Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss. See Plubell v. Merck & Co., 289 S.W.3d at 715 ("because Plaintiffs alleged Vioxx was worth less than the product as represented, they stated an objectively ascertainable loss under the MMPA using the benefit-of-the-bargain rule"); Grabinski v. Blue Springs Ford Sales, Inc., 136 F.3d 565, 570 (8th Cir. 1998) (affirming actual damages for MMPA claim against dealership and its employees where vehicle was not as described and required thousands of dollars of repairs); Sunset Pools, 869 S.W.2d at 886 (affirming judgment in favor of purchaser where spa was represented as new, but was actually used and damaged and its warranty was expired). Whether Plaintiff "can

5

present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss." Clement v. St. Charles Nissan, Inc., 103 S.W.3d 898, 900 (Mo. App. E.D. 2003). Thus, Plaintiff's Petition, alleging that the Chips as purchased were worth less than as represented sufficiently states that she has suffered an ascertainable loss under the MMPA at this stage of the litigation.

### B. Plaintiff's claim of an unlawful act under the MMPA

The next basis argued by Defendants for dismissal is that Plaintiff has failed to plausibly allege that Defendants' "natural" labeling is false or deceptive. The two specific arguments asserted by Defendants are that: (a) the Petition offers no plausible definitions for the term "natural"; and (b) Defendants' federally compliant labels ensure that consumers understand precisely the ingredients the chips contain.

A civil action under the MMPA requires a showing of "the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Mo. Rev. Stat. § 407.025.1. The unlawful practices set forth in Section 407.020 include "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact." Mo. Rev. Stat. § 407.020.1. The MMPA's "fundamental purpose is the 'protection of consumers'" Huch v. Charter Commc'ns., Inc., 290 S.W.3d 721, 724 (Mo. 2009) (quoting State ex rel. Nixon v. Cont'l Ventures, 84 S.W.3d 114 (Mo. App. W.D. 2002)). To promote that purpose, the MMPA does not define deceptive practices; it simply declares unfair or deceptive practices unlawful." Huch, 290 S.W.3d at 724 (quoting State ex rel. Danforth v. Independence Dodge, Inc., 494 S.W.2d 362, 368 (Mo. App. 1973); see also Ward v. West County Motor Co., 403 S.W.3d 82, 84 (Mo. 2013) (citation omitted) ("The MMPA is

6

drafted broadly and there is no specific definition of deceptive practices contained in the statute").

Defendants first assert that none of the definitions offered by Plaintiff for the term "natural" are plausible. Defendants argue that the dictionary definition of "natural" offered by Plaintiff, that being "existing or produced by nature: not artificial," is not plausible because the Chips are processed foods, which do not occur in nature. They further argue that the proposed Food and Drug Administration ("FDA") and the Department of Agriculture ("USDA") definitions of "natural" offered by Plaintiff are informal, irrelevant, and/or inapplicable.

Plaintiff's Petition claims that the Chips contain numerous artificial and synthetic ingredients and thus are not "natural." (Doc 1-1, ¶ 30). The Petition lists thirteen ingredients purportedly contained in the Chips that are allegedly preservatives and/or artificial or synthetic. (Id. ¶ 40). The Petition proposes that a reasonable consumer would understand the term "natural" to comport with the term as defined in the dictionary and federal regulations relating to food. (Id. ¶ 31). In addition to the dictionary definition noted above, the Petition claims that FDA and the USDA agree that a "natural" product "should not contain any artificial or synthetic ingredients, coloring or artificial flavoring, or chemical preservatives. (Id. ¶¶ 34-36).

First, the dictionary definition offered in paragraph 32 of the Petition is not plausible. The term "natural" is "vague and ambiguous." Balser v. Hain Celestial Group, Inc., No. 13-05604-R, 2013 U.S. Dist. Lexis 180220 at *3 (C.D. Cal. Dec. 18, 2013). The Merriam-Webster definition offered by Plaintiff for the term "natural" as "existing or produced by nature: not artificial," is not plausible because the Chips are processed foods, which of course do not exist or occur in nature. Id. (citing Pelayo v. Nestle USA, Inc., 989 F. Supp. 2d 973, 978 (C.D. Cal.

7

2013). Thus, no reasonable consumer could possibly believe that this definition could apply to the Chips since "they are a product manufactured in mass." Id.

Next, in paragraph 34, the Petition refers to an informal advisory opinion of the FDA addressing its policy regarding the use of "natural," set forth in the Federal Register, "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (1993). This is not, however, a federal regulation, and the FDA has specifically declined to adopt any formal definition of "natural." Id. ("Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for 'natural' at this time.") Defendants have moved the Court to take judicial notice of an FDA letter dated January 6, 2014 and also of the USDA's Food Standards and Labeling Policy Book, and the Court will grant said motion. (Doc. 9). The FDA letter (Doc. 9-1) cited by Defendants points out that the FDA has maintained the aforementioned policy regarding the use of the term "natural," and "has not promulgated a formal definition of the term 'natural'." Further, this informal advisory opinion "does not establish a legal requirement." Pelayo, 989 F.Supp. 2d at 979. The informal advisory opinion itself states that the FDA solicited comments on this issue, but the solicited comments failed to provide a "specific direction to follow for developing a definition [] of the term 'natural'." 58 Fed. Reg. at 2407. Accordingly, the Court finds that Plaintiff has failed to provide a plausible definition here.

In paragraph 35 of her Petition, Plaintiff points to a definition of "natural" set forth by the USDA Food Safety and Inspection Service ("FSIS") in its Food Standards and Labeling Policy Book ("Policy Book") (Doc. 9-2). Like the aforementioned FDA policy, however, the Policy Book is not a federal regulation, but instead, as set forth in the Introduction, is a "composite of

8

policy and day-to-day labeling decision[s]." Furthermore, the Policy Book entry for "natural claims" addressing the term "natural" specifically states that it applies to "labeling for meat products and poultry products." Because the Chips are neither a "meat product" nor a poultry product," this claimed definition does not apply in this action.

While admitting that there is no federal regulatory definition of an artificial ingredient (Doc 1-1, ¶ 37), Plaintiff attempts to utilize an FDA definition for "artificial flavoring." The citation provided by Plaintiff, 21 C.F.R. § 501.22, however, applies to animal food and not food for human consumption. The FDA does have an identical definition for "artificial flavoring" regarding food for human consumption, set forth in 21 C.F.R. § 101.22(a)(1). Artificial flavor "includes the substances listed in §§ 172.515(b) and 182.60." 21 C.F.R. § 101.22(a)(1). None of the 13 challenged ingredients listed by Plaintiff in paragraph 40 of her Petition, however, are present on the extensive list of artificial flavors set forth in 21 C.F.R. §§ 172.515(b) and 182.60. Accordingly, Plaintiff has failed to allege that any of the challenged ingredients are "artificial flavoring" under the (incorrectly) cited FDA definition. Therefore, this proposed definition is inapplicable in this case. See Pelayo, 989 F.Supp. 2d at 979.

Finally, Plaintiff refers to a USDA definition of "synthetic" set forth in 7 C.F.R. § 205.2. (Doc 1-1, ¶ 38). The cited definition, however, is a part of the USDA's National Organic Program, which applies to products that are sold, labeled, or represented as "organic." 7 C.F.R. § 205.100. As Plaintiff does not allege that any of the Chips are sold as "organic," the National Organic Program rules and definitions do not apply to them. Id. Accordingly, this offered definition is also inapplicable in this case.

Based on the foregoing, the Court finds that Plaintiff has failed to provide a plausible or applicable definition for the term "natural." Further, "where a Court can conclude as a matter of

9

law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." Pelayo, 989 F.Supp. 2d at 978. As a result, in the absence of any plausible definition for the term "natural," Plaintiff has failed to state a claim that the use of the term was deceptive or misleading under the MMPA.

In her opposition, Plaintiff asserts that Defendants failed to challenge her claim regarding the "no preservatives" representation. However, a review of the Petition shows that Plaintiff has failed to allege facts in support of this claim. In paragraphs 22-23, Plaintiff alleges that her attached Exhibit A shows that the labeling and packaging for the Chips contain multiple representations that the Chips contain "no preservatives," and that said representations "are placed conspicuously on the packaging and are uniformly stated on all varieties." A review of Exhibit A (Doc. 1-1, pp. 32-38), however, which consists of images of the packaging of 12 different varieties of chips, shows no representations whatsoever that the Chips contain "no preservatives." In ruling on a motion to dismiss under Rule 12(b)(6), a court "may consider material attached to the complaint." Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006) (citation omitted); Fed. R. Civ. P. 10(c). In paragraphs 25 and 26, Plaintiff further claims that Defendants make additional representations on their website and Facebook page as to the preservative-free qualities of the Chips, but the specific representations and/or quotes provided by Plaintiff again make no mention of preservatives in any way. (Doc 1-1, ¶¶ 25(a)-(c), 26). Accordingly, the Court finds that Plaintiff's assertions that Defendants have represented that the Chips contain "no preservatives" are conclusory allegations that fail to state particularized facts in support of the claim for relief. The Court therefore concludes that the Petition fails to state a claim that the labeling and marketing of the Chips constituted an unlawful practice under the MMPA.

Defendants also argue that, in compliance with FDA regulations, their food product labels list the ingredients contained in the Chips, ensuring that consumers are given all the information they need to make an informed decision. See Pelayo, 989 F.Supp. 2d at 980 ("any ambiguity regarding the definition of 'All Natural' with respect to [the product] is clarified by the detailed information contained in the ingredient list."); Kane v. Chobani, Inc., 2013 U.S. Dist. Lexis 134385 at *36 (N.D. Cal., Sept. 19, 2013) ("Because the labels clearly disclosed the presence of the [allegedly unnatural ingredients], it is not plausible that Plaintiffs believed, based on Defendant's [] 'all natural' representations, that the [product] did not contain [the challenged ingredients]"). The Court agrees that the federally-compliant ingredient label on the back of the Chips defeats Plaintiff's claims that the Chips' labeling constitutes an unlawful practice under the MMPA. Plaintiff's assertion that she was deceived by Defendants' labeling is contradicted by the full disclosure of the challenged ingredients by Defendants. Further, if Plaintiff wished to avoid products containing the challenged ingredients, Defendants provided her with all the information she needed to do so. Thus, the Court finds that Defendants' labeling of the Chips is not deceptive or misleading with regards to the ingredients contained therein. Accordingly, Plaintiff has failed to state a claim that Defendants committed any unlawful act under the MMPA.

### C. Plaintiff's standing

Defendants argue Plaintiff lacks standing in two ways: (a) to seek injunctive relief, because she has admitted that she would not purchase the chips again; and (b) to assert claims as to the twelve varieties of Chips that she did not purchase, because she suffered no loss as to those varieties.

Regarding Plaintiff's claim for injunctive relief, Plaintiff seeks an order permanently enjoining Defendants from "deceptively labeling and marketing Cape Cod Chips" and "selling Cape Cod Chips that are deceptively labeled and marketed." Plaintiff further seeks an order "requiring Defendants to immediately recall all Cape Cod Chips that are deceptively labeled and marketed," and "requiring Defendants to truthfully represent its Cape Cod Chips in all future labeling and marketing of the product." (Doc. 1-1 at 25). Plaintiff states in her Petition that "(h)ad Plaintiff and members of the Class known the true nature of Defendants' Cape Cod Chips, they would not have purchased Defendants' Cape Cod Chips for more than its actual value." (Doc . 1-1, ¶ 56). The Chip's "true nature," according to Plaintiff, is that they are "an inferior product that is unnatural and contains preservatives." (Doc . 1-1, ¶ 9).

Article III of the United States Constitution "confines the jurisdiction of federal courts to justiciable cases and controversies." Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992)). "(S)tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Id. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Lujan, 504 U.S. at 564 (quoting L.A. v. Lyons, 461 U.S. 95, 102 (1983)). A plaintiff "must show that she is likely to suffer some future injury to obtain injunctive relief." Meagley v. City of Little Rock, 639 F.3d 384, 391 (8th Cir. 2011).

Given Plaintiff's assertion that, knowing the "true nature" of the Chips, she would not purchase the Chips for more than their actual value, the Court finds that Plaintiff lacks standing to seek injunctive relief. Because Plaintiff is now aware of Defendants' alleged deception and knows the Chips are "an inferior product that is unnatural and contains preservatives," she is not

12

likely to purchase the Chips as they exist at present. Further, the Petition contains no allegations that Plaintiff intends to purchase Cape Cod Chips from Defendants in the future. Thus, Plaintiff is not likely to suffer any future injury. Accordingly, Plaintiff lacks standing to seek injunctive relief.

Defendants also argue that Plaintiff lacks standing as to twelve varieties of the Chips she did not purchase. Although Plaintiff asserts claims as to sixteen varieties of Cape Cod Chips, she herself only purchased four of those sixteen varieties. (Petition ¶¶ 11, 16). Specifically, Plaintiff asserts that she purchased the Sweet Mesquite Barbecue, Sea Salt & Vinegar, Sweet & Spicy Jalapeno, and Sea Salt & Cracked Pepper varieties. (Id. ¶ 11).[1] Standing requires three elements, the first of which is the plaintiff "must have suffered an injury in fact." Lujan, 504 U.S. at 560. Defendants state that Plaintiff's alleged injury is her payment of a premium price for the Chips. Thus, according to Defendants, as to the twelve varieties of the Chips she did not purchase, Plaintiff has suffered no injury.

Plaintiff argues that she has standing "to assert claims for unnamed class members based on products [] she did not purchase so long as the products and alleged misrepresentations are substantially similar." Miller v. Ghirardelli Chocolate Co., 912 F.Supp.2d 861, 869 (N.D. Cal. 2012). In the alternative, Plaintiff argues that, as a class representative, whether she can assert a claim relating to non-purchased products "depends not on standing but on an assessment of typicality and adequacy of representation" to be addressed at the class certification stage. Cardenas v. NBTY, Inc., 870 F.Supp.2d 984, 992 (E.D. Cal. 2012).

---

[1] The twelve varieties of Cape Cod Kettle Cooked Potato Chips not purchased by Plaintiff are: Original; Sour Cream & Green Onion; 40% Reduced Fat Original; 40% Less Fat Sea Salt & Vinegar; 40% Less Fat Sweet Mesquite Barbecue; 40% Less Fat Aged Cheddar & Sour Cream; 40% Less Fat Sea Salt & Cracked Pepper; Waffle Cut Sea Salt; Waffle Cut Farm Stand Ranch; Waffle Cut Seasoned Pepper; Chef's Recipe Feta & Rosemary; and Chef's Recipe Roasted Garlic & Red Pepper.

13

Those who seek to invoke the power of the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." O'Shea v. Littleton, 414 U.S. 488, 493 (1974). Article III requires "an injury [to] be concrete, *particularized*, and *actual* or imminent." Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1030 (8th Cir. 2014). In a class action, the plaintiff seeking to represent a class must establish that she, personally, has standing to bring the cause of action. If the plaintiff cannot maintain the action on her own behalf, she may not seek such relief on behalf of the class. O'Shea, 414 U.S. at 494.

Based on the foregoing, the Court agrees that Plaintiff lacks Article III standing as to the varieties of the Chips she did not purchase. Because Plaintiff admittedly did not purchase twelve of the sixteen varieties of the Chips, she was neither personally nor actually harmed as to those twelve varieties. Accordingly, Plaintiff cannot maintain the action as to those twelve varieties on her own behalf, and as a result, she cannot seek relief as to those twelve varieties on behalf of the class.

Based on the foregoing, it is ORDERED that Defendants' Motion to Dismiss (Doc. 7) is GRANTED and this action is dismissed for failure to state a claim upon which relief can be granted.

SO ORDERED.


Date: January 27, 2015                                         /s/ Dean Whipple
                                                                  Dean Whipple
                                                          United States District Judge